APPLIED HYDRO-PNEUMATICS, INC., Respondent, v BAUER MAN-
UFACTURING, INC., Defendant, and BAUER/ELECTRO, INC.,
Appellant.

Second Department, May 7, 1979

APPEARANCES OF COUNSEL

*Jacobs Persinger & Parker (Thomas W. Jackson* and *Jeffrey I. Slonim* of counsel), for appellant.

*Walter P. Roura* for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

This is an action by an agent, *inter alia,* to recover commissions for services rendered. Defendant Bauer/Electro, Inc., appeals from an order of the Supreme Court, Nassau County, which granted plaintiff's motion to dismiss its affirmative defense of lack of personal jurisdiction and denied its cross motion for summary judgment. The order should be affirmed.

On October 27, 1975 appellant, Bauer/Electro, Inc. (Bauer),

purchased the encumbered assets of defendant Bauer Manufacturing, Inc. (BMI), from the secured party (Connecticut Bank and Trust Company) at a private sale. Prior to that purchase the plaintiff, Applied Hydro-Pneumatics, Inc. (AHP), had been appointed to act as BMI's agent to secure purchasers for its products. AHP is a New York corporation located in Valley Stream, New York. BMI was incorporated and located in Connecticut, as is the new corporation, Bauer/Electro, Inc. Pursuant to their course of dealing, the prices of BMI's products were quoted through AHP's offices in Valley Stream, which also served as the place through which the orders were placed and correspondence relating to those orders was processed. In point of fact, it appears on this record that BMI undertook to maintain little if any direct contact with its customers, but dealt with them almost exclusively through AHP.

As agent for BMI, AHP secured two orders for aircraft fuel test stands in 1974, one from Varig Brazilian Airlines and the other from Sikorsky Aircraft Corporation. In connection, at least with the Varig transaction, the agreement that AHP serve as "agent" was reached in discussions with BMI's president in New York City during July of 1973, and in May of 1974 an advance payment of $25,000 was sent by Varig to BMI through AHP in New York.[1] Thereafter, and on April 7, 1975, Raymond Dukes, the vice-president in charge of marketing for BMI (now, sales manager for Bauer/Electro) journeyed to New York to discuss proposed modifications in the Varig test stand with the airline's representatives here. The agreed-upon commission on the Varig order was $3,000, and on the Sikorsky order was more than $4,100. The commissions in either instance were to become due and payable upon the receipt of final payment from the customer. Subsequently, the agency agreement was canceled by BMI, but in a letter dated April 15, 1975, the latter specifically promised to fulfill its outstanding obligations to AHP.

When Bauer/Electro purchased the assets (including the

---

1. More generally, the affidavit of plaintiff's secretary/treasurer asserts that the agreement that AHP function as agent for BMI was reached earlier as a result of negotiations conducted in person in New York with representatives of BMI and over the telephone. Thus, it is alleged that on or about June 18, 1973, Mr. Peter Demarest (the then president of BMI, now an officer of Bauer/Electro), personally delivered a letter to plaintiff's officers in New York quoting the price for a test stand to be sold to Sikorsky Aircraft. The specific agreement relating to the Varig contract was apparently entered into separately.

contract rights) of BMI, the Varig and Sikorsky contracts had not as yet been performed. Bauer subsequently completed the test stands and delivered them (F.O.B. its plant in Connecticut), but took the position upon receiving final payment that it had acquired the assets of BMI free of any obligation to AHP. Accordingly, Bauer/Electro refused to remit any commissions on account of those contracts to the plaintiff.

In this action, which is based upon allegations of breach of contract and the alleged fraudulent transfer of BMI's assets, jurisdiction was predicated on our "long-arm" statute, CPLR 302 (subd [a], pars 1, 3), in response to which Bauer/Electro pleaded the lack of personal jurisdiction as a defense (CPLR 3211, subd [a], par 8). On plaintiff's motion, this defense was ordered stricken by Special Term. We agree with that determination.

Under the circumstances of the instant case, the "contractual" duty of Bauer/Electro to compensate the plaintiff, if any, arises out of the latter's efforts on behalf of BMI in New York, and to this extent it is important to note that in the absence of any allegation of deliberate or purposeful acts by Bauer/Electro in New York in connection with these contracts, the predicate for "long-arm" jurisdiction must be found in the acts of the prior corporation (BMI) and Bauer's own acts with relation thereto in Connecticut. Thus viewed, plaintiff may not rely upon its own acts in New York, as agent, to form the jurisdictional predicate under CPLR 302 (subd [a], par 1 [transaction of business within the State]) (see *Haar v Armendaris Corp.,* 31 NY2d 1040; *Parke-Bernet Galleries v Franklyn,* 26 NY2d 13, 19, n 2), but can and does rely on the fact that the over-all agreement that it function as agent was negotiated and substantially finalized at meetings in New York; that the agreement pertaining to the Varig transaction was fully negotiated and finalized at meetings in New York; and that the performance which it was required to make pursuant to these agreements contemplated a course of conduct requiring it to perform substantial liaison and other activities here in connection with the procurement and servicing of customer contracts. Moreover, the foregoing is not disputed in the papers submitted in opposition to plaintiff's motion and in support of appellant's cross motion for summary judgment, notwithstanding the fact that at least two of the principal operating officers of Bauer/Electro, Inc. occupied the same or similar positions with BMI.

Although the issue is not free from doubt, it is our view, on the present state of the record, that the foregoing constituted sufficient purposeful activity by BMI in New York to subject it to suit here by AHP in accordance with CPLR 302 (subd [a], par 1) (see *Reiner & Co. v Schwartz,* 41 NY2d 648; *Hi Fashion Wigs v Hammond Adv.,* 32 NY2d 583; see, also, *American Eutectic Welding Alloys Sales Co. v Dytron Alloys Corp.,* 439 F2d 428; *Liquid Carriers Corp. v American Mar. Corp.,* 375 F2d 951), and that plaintiff's allegation that Bauer's voluntary election to complete the contracts constituted, in effect, a *nunc pro tunc* ratification and adoption of BMI's acts in New York is sufficient to subject Bauer/Electro to personal jurisdiction in our courts on a cause of action arising out of the transaction of business here between AHP and its corporate predecessor[2] (see *Evans v Planned Parenthood of Broome County,* 43 AD2d 996; see, also, *Longines-Wittnauer v Barnes & Reinecke,* 15 NY2d 443, 460, cert den 382 US 905; 1 Weinstein-Korn-Miller, NY Civ Prac, par 302.12, p 3-107 *et seq.;* McLaughlin, 1974 Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR 302:5; cf. *Shenin v Micro Copper Corp.,* 272 F Supp 523). Having thus concluded that jurisdiction may be sustained pursuant to CPLR 302 (subd [a], par 1), it is unnecessary to determine whether it may also be sustained pursuant to CPLR 302 (subd [a], par 3) predicated upon the alleged commission of a tortious act without the State (Bauer/Electro's alleged participation in the fraudulent transfer of BMI's assets) causing injury to persons or property within the State (the alleged rendering insolvent of BMI and its resultant financial inability to meet its contractual obligations to AHP). However, the weight of authority would appear

---

2. We note in passing that Bauer/Electro has admitted in answers to written interrogatories that it regularly solicits business in New York at the present time by sending employee-salesmen into our State on an average of once a month to procure orders for its products. This clearly constitutes such "purposeful activity" within the State as would render the exercise of jurisdiction over it consistent with the requirements of due process (see *International Shoe Co. v Washington,* 326 US 310). We further note that in the answers to interrogatories, Bauer has admitted that, within the past year, it has (1) "entered into contracts for the purchase of goods or raw materials within the State of New York", (2) entered into contracts "for the sale of its goods or products within the State of New York", and (3) shipped certain of its "goods, products or raw materials (including component parts) into the State of New York". Although not relied on by the plaintiff, there is thus some evidence in the record that Bauer/Electro may actually be "doing business" in New York (CPLR 301), which would render plaintiff's reliance on the "long-arm" statute (CPLR 302) unnecessary. In order to establish this fact, however, a remand would have to be ordered to inquire into the jurisdictional facts.

to call forth a negative answer (see, e.g., *American Eutectic Welding Alloys Sales Co. v Dytron Alloys Corp.,* 439 F2d 428, *supra,* cited with approval in *Reiner & Co. v Schwartz,* 41 NY2d 648, 654, *supra; Fantis Foods v Standard Importing Co.,* 63 AD2d 52, 59 *et seq.* [dissenting opn by SULLIVAN, J.], mot for lv to app granted 64 AD2d 1036; McLaughlin, 1978 Supplementary Practice Commentary, McKinney's Cons Law of NY, Book 7B, CPLR 302:20).

So much of the order appealed from as denied the cross motion for summary judgment was also properly decided, as the facts concerning the *bona fides* of the transfer of BMI's assets are exclusively within the defendants' knowledge at this stage of the proceedings (see CPLR 3212, subd [f]), and a question of fact exists as to whether Bauer/Electro ratified or adopted the agreement to pay commissions to AHP by virtue of its performance of the contracts procured by the former for BMI. In connection with this last point, it appears on the present record that the "foreclosure" of BMI's assets under the security agreement (which preceded the transfer of said assets to Bauer/Electro) should not affect this right, as plaintiff's right to recover commissions did not mature until *after* the contract of sale was fully performed. As was previously mentioned, the sales contract upon which plaintiff relies was not fully performed until after the foreclosure and sale. In any event, it cannot be determined on the record before us whether any purported foreclosure of plaintiff's rights was accomplished in accordance with law.

MOLLEN, P. J., O'CONNOR, RABIN and GULOTTA, JJ., concur.

Order of the Supreme Court, Nassau County, dated December 30, 1977, affirmed, with $50 costs and disbursements.