918 F.2d 1039
 LANDOIL RESOURCES CORPORATION, Plaintiff,
v.
ALEXANDER & ALEXANDER SERVICES, INC., Alexander & Alexander
Inc., and Alexander & Alexander of New York Inc., Defendants,
ALEXANDER & ALEXANDER SERVICES, INC., Alexander & Alexander
Inc., and Alexander & Alexander of New York Inc.,
Third-Party Plaintiffs-Appellants,
v.
CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, Subscribing to
Insurance Agreement MA-8255049 and an Unnumbered Insurance
Agreement With an Effective Date of July 1, 1982, Sedgwick
International Limited and/or Sedgwick Marine Limited and/or
Other Entities in the Sedgwick Group P.L.C., Third-Party Defendants,
and
Sedgwick International Limited and/or Sedgwick Marine
Limited and/or Other Entities in the Sedgwick
Group P.L.C., Third-Party Defendants-Appellees.
 No. 1371, Docket 90-7061.
 United States Court of Appeals,
Second Circuit.
 Argued June 8, 1990.
Decided Nov. 13, 1990.
As Amended Jan. 2, 1991.
 
 1
 Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (Thomas W. Hyland, Jonathan C. Thau, Thomas A. Leghorn, Jeffrey A. Sims, Michael Schwartzberg, of counsel), for third-party plaintiffs-appellants.
 
 
 2
 Cleary, Gottlieb, Steen & Hamilton, New York City (George Weisz, Mitchell A. Lowenthal, Michael I. Verde, Joshua H. Rawson, of counsel), for third-party defendants-appellees.
 
 
 3
 Before OAKES, Chief Judge, PRATT, Circuit Judge and SPRIZZO, District Judge.*
 
 SPRIZZO, District Judge:
 
 4
 Third-party plaintiffs-appellants Alexander & Alexander Services Inc., Alexander & Alexander Inc., and Alexander & Alexander of New York Inc. (collectively "Alexander & Alexander") appeal from an order dated December 19, 1989, which dismissed the third-party complaint against third-party defendants-appellees Sedgwick International, Limited ("Sedgwick International") and Sedgwick Marine & Cargo, Limited ("Sedgwick Marine") (collectively the "Sedgwick defendants"). For the reasons that follow, we affirm the decision of the district court.
 
 BACKGROUND
 The Underlying Action
 
 5
 In November of 1987 plaintiff Landoil Resources Corporation ("Landoil") sued Alexander & Alexander for breach of several contracts, fraud and misrepresentation, violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Secs. 1961-1965 (1988), and civil conspiracy. That action arose out of a series of transactions whereby Alexander & Alexander, insurance brokers, agreed to procure political risk insurance for Landoil, which was engaged in the construction and management of various roadway, housing, port, and airport projects in Iraq, Libya, Saudi Arabia, Kuwait, and the United Arab Emirates. Accordingly, Alexander & Alexander and a London affiliate, Alexander Howden Insurance Brokers Limited, concluded a contract effective July 1, 1982 with the third-party defendant Underwriters at Lloyd's of London ("the Underwriters") pursuant to which the Underwriters agreed to provide $50 million in political risk coverage to Landoil. However, the Underwriters voided the contract ab initio on July 29, 1982 on the ground that Landoil had failed to disclose material facts regarding the risks to be insured.
 
 
 6
 Subsequently, Alexander & Alexander attempted to negotiate with the Underwriters to have the coverage reinstated. In order to do so, they began a process known as "vetting," which entailed investigating Landoil's contracts so that Landoil or its brokers could present additional facts to the Underwriters. This process continued from September to December 1982. In addition, during August of 1982, Alexander & Alexander retained the Sedgwick defendants to act as its brokers with the Underwriters.
 
 
 7
 While the vetting process proceeded, Alexander & Alexander entered into another insurance contract with the Underwriters which reinstated the terms of the first contract effective September 30, 1982. This contract was formally issued by the Underwriters on January 18, 1983, and the premiums were paid in accordance with its terms. Between March 1983 and September 1983, Landoil submitted four claims to the Underwriters under this contract. However, on or about September 21, 1983, the Underwriters notified Alexander & Alexander that they would not renew the policy and, thereafter, on October 18, 1983, they voided the policy ab initio on the ground that Landoil had misrepresented and/or failed to disclose material facts about its risks.
 
 
 8
 Landoil then filed its action against Alexander & Alexander, alleging that it had breached its agreements to procure insurance, that it failed to make adequate disclosures to the underwriters on its behalf, and that it failed to advise Landoil of certain material facts that had to be disclosed. Additionally, Landoil alleged that Alexander & Alexander misrepresented its competence and expertise as insurance brokers in the field of political risk insurance. Alexander & Alexander initially moved to dismiss the entire complaint. That motion was denied. Subsequently, on January 9, 1989, Alexander & Alexander filed a third-party complaint against the Sedgwick defendants and the Underwriters.[1]
 
 
 9
 The third-party complaint alleged as against the Sedgwick defendants that if Alexander & Alexander is liable to Landoil, then such liability was caused by the negligence and/or breach of contract of the Sedgwick defendants in failing to disclose information provided to them by Alexander & Alexander to the Underwriters. The Sedgwick defendants initially moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction; to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(3) on the ground of forum non conveniens; or alternatively for a severance of the third-party action from the main action. The district court denied the motion but permitted the parties to conduct discovery on the issue of personal jurisdiction for the eighteen-month period beginning one year prior to the filing of the third-party complaint, i.e., from January 1, 1988 to July 31, 1989.
 
 
 10
 Following discovery, the Sedgwick defendants renewed the motion and both parties supplemented their motion papers. Judge Knapp then issued a memorandum and order dated December 19, 1989, where, after "view[ing] the facts in the light most favorable to [Alexander & Alexander]," he found that it had failed to establish by a preponderance of the evidence that the Sedgwick defendants were " 'doing business' in New York within the rule set forth by the New York Court of Appeals in Frummer v. Hilton Hotels Int'l, Inc. (1967) 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, cert. denied (1967) 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266."The Sedgwick Defendants' Contacts with New York
 
 
 11
 Viewed in the light most favorable to Alexander & Alexander, the evidence submitted to the district court established the following facts. Both Sedgwick Marine and Sedgwick International are corporations organized and existing under the laws of England and do business there. Both companies act as insurance and reinsurance brokers and are subsidiaries of the Sedgwick Group, p.l.c., a publicly held English corporation that is not a party to this action. There is no dispute that neither company has ever been incorporated or licensed to do business in the State of New York; that neither company has designated agents for service of process in the State of New York; that neither company has offices, bank accounts, telephone listings, or mailing addresses in the State of New York, or employees or agents residing there; that neither company owns, leases or has any interest whatsoever in any real property in New York; that neither company possesses assets or personal property in the State of New York; and that neither company has ever paid taxes in the State of New York.
 
 
 12
 The affidavits and deposition testimony further established that representatives of Sedgwick Marine and Sedgwick International traveled to New York for business purposes several times during the eighteen-month period referred to above. Specifically, Sedgwick International sent representatives to New York eight times during that time period, and Sedgwick Marine sent representatives five times.[2] These meetings involved service to several existing clients and solicitation of new business. None of those visits to New York were made in connection with the transactions involved in this litigation. Moreover, as the district court noted, there is no suggestion that the Sedgwick representatives conducted their business from a permanent locale or that they were provided office space in New York. Nor did the meetings referred to above occur in the same place or involve the same individuals.
 
 
 13
 The record also established that both of the Sedgwick defendants placed insurable interests through New York brokers. Sedgwick International placed risks through New York brokers on at least 146 occasions, earning commissions of $3,315,955.64.[3] Sedgwick Marine placed risks through brokers in New York twelve times and earned $619,122.07 in commissions from those transactions. Both companies acknowledged that these placements were sent to New York, when they were unable to place them on the London market, because of the capacity of the New York insurance market. However, the risks were not always placed in New York. Often the New York broker would obtain insurance for those risks elsewhere. Further, both companies utilized Sedgwick International Marketing Services ("SIMS"), a sister company located in New York, as their New York broker to place the insurance for a vast majority of these transactions. Sedgwick International used SIMS 143 out of 146 times; Sedgwick Marine used SIMS four out of twelve times.
 
 
 14
 In addition, both Sedgwick Marine and Sedgwick International placed insurance on the London market for several New York insurance brokers. The record indicates that Sedgwick International did so a total of twelve times and Sedgwick Marine did so four times. Sedgwick International received approximately $1,321,713.00 from those transactions while Sedgwick Marine received approximately $26,049. However, the record also establishes that during the relevant period Sedgwick Marine placed a total of approximately 9,500 risks world-wide and received gross revenues of approximately pounds sterling23,414,000. Sedgwick International placed approximately 6,000 risks, for which it received gross revenues approximating pounds sterling17,605,000.DISCUSSION
 
 
 15
 The issue before this Court is whether either or both of the Sedgwick defendants are subject to personal jurisdiction under New York law[4] on the theory that they are present in New York within the meaning of N.Y.Civ.Prac.L. & R. 301 (McKinney 1990) ("CPLR").[5] Since the district court allowed the parties to conduct discovery on the jurisdictional issue, Alexander & Alexander bears the burden of proving by a preponderance of the evidence that personal jurisdiction exists. See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir.1984). However, since the district court did not hold a hearing or a trial on the merits, all pleadings and affidavits must be construed in the light most favorable to Alexander & Alexander and all doubts must be resolved in the third-party plaintiff's favor. See Hoffritz For Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir.1985). See generally Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196-97 (2d Cir.1990).
 
 
 16
 Section 301, as construed by the New York courts, permits a court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is " 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.' " McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981) (quoting Simonson v. Int'l Bank, 14 N.Y.2d 281, 285, 200 N.E.2d 427, 429, 251 N.Y.S.2d 433, 436 (1964)); accord, Hoffritz, supra, 763 F.2d at 58; Laufer v. Ostrow, 55 N.Y.2d 305, 309-10, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 458 (1982); Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 536, 227 N.E.2d 851, 853, 281 N.Y.S.2d 41, 43, cert. denied, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). However, New York law requires that the defendant be present in New York "not occasionally or casually, but with a fair measure of permanence and continuity." Tauza v. Susquehanna Coal Corp., 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917).
 
 
 17
 The test is a "simple pragmatic one," Bryant v. Finnish Nat'l Airline, 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441, 260 N.Y.S.2d 625, 629 (1965), which is necessarily fact sensitive because each case is dependent upon its own particular circumstances. See Stark Carpet Corp. v. M-Geough Robinson, Inc., 481 F.Supp. 499, 504 (S.D.N.Y.1980) (citing Manchester Modes, Inc. v. Lilli Ann Corp., 306 F.Supp. 622, 624 (S.D.N.Y.1969)). The Court must therefore analyze a defendant's connections to the forum state "not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York." Weinstein, Korn & Miller, New York Civil Practice, p 301.16, at 3-32.
 
 
 18
 In assessing jurisdiction under this pragmatic standard, New York courts have generally focused on the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York. Hoffritz, supra, 763 F.2d at 58 (citations omitted). However, the "[s]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services." Laufer, supra, 55 N.Y.2d at 310, 434 N.E.2d at 694, 449 N.Y.S.2d at 459; see Frummer, supra, 19 N.Y.2d at 536, 227 N.E.2d at 853, 281 N.Y.S.2d at 43; Miller v. Surf Properties, 4 N.Y.2d 475, 480, 151 N.E.2d 874, 876, 176 N.Y.S.2d 318, 320 (1958). On the other hand, if the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist. See Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir.1983); Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 211 (2d Cir.1970); Laufer, supra, 55 N.Y.2d at 309-11, 434 N.E.2d at 695, 449 N.Y.S.2d at 459; D. Siegel, New York Practice, Sec. 82, at 90-91. Under this "solicitation-plus" rule, "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.' " Aquascutum, supra, 426 F.2d at 211.
 
 
 19
 Alexander & Alexander argue that the district court erred in not applying the "solicitation-plus" test for personal jurisdiction under New York law,[6] contending that under that test the Sedgwick defendants' employees' trips to the United States to service existing accounts and solicit new ones constituted substantial solicitation and that the following factors meet the "plus" portion of the test: the placement of New York insurance risks in London; the placement of foreign insurance risks in New York; the circumstance that the Sedgwick defendants received substantial revenue from these New York transactions; and the Sedgwick defendants' relationship to SIMS.
 
 
 20
 The Sedgwick defendants, relying upon this Court's decision in Beacon Enterprises, argue that the solicitation-plus theory of jurisdiction requires that the solicitation of business must be carried on with a " ' "considerable measure of continuity and from a permanent locale" within the state.' " 715 F.2d at 763 (quoting Stark Carpet Corp., supra, 481 F.Supp. at 505 (quoting Bryant, supra, 15 N.Y.2d at 431, 208 N.E.2d at 441, 260 N.Y.S.2d at 628)).
 
 
 21
 We are not persuaded that the presence of a permanent locale in the State of New York is a prerequisite to the exercise of jurisdiction under CPLR 301, nor do we agree that this Court's decision in Beacon should properly be read to support that contention.[7] As noted above, the issue of whether a defendant has such a systematic and continuous contact with New York as to be tantamount to presence within the state is a fact-sensitive determination requiring a balancing of all relevant factual circumstances. Therefore, the solicitation-plus rule is not a talismanic test for jurisdiction, but merely a means by which courts have attempted to resolve that issue. Cf. Katz Communications, Inc. v. Evening News Ass'n, 705 F.2d 20, 23 (2d Cir.1983) ("[w]e do not agree that ... the rule [that mere solicitation is not enough to compel jurisdiction upon a foreign corporation] is as inflexible as that statement indicates."); see also Weinstein, Korn & Miller, supra, at p 301.16, at 3-38 (opining that "if solicitation is truly substantial and continuous, then defendant is undoubtedly deriving significant benefits from the state, such that it is unlikely that defendant would lightly cease activity in New York. In other words, solicitation can be as indicative of permanence as an office or substantial sales and shipments.").
 
 
 22
 Indeed, an analysis of Beacon and other cases decided by this Court and the courts of New York suffices to dispose of the notion that there is any per se rule requiring a permanent locale in New York or indeed any bright-line rule for determining when factors other than mere solicitation are sufficient to establish the systematic and continuous presence which New York law requires. For example, in Beacon, the acts of the defendant upon which plaintiff sought to predicate jurisdiction consisted of nothing more than a letter written to the plaintiff and an unspecified number of mail order sales to New York. See 715 F.2d at 762. Similarly, in Stark, the defendant derived only two percent of its total income from New York and its representatives visited New York only four times a year. See 481 F.Supp. at 505. It was only in the context of such minimal contacts that the Court found the absence of a permanent locale in New York significant and dispositive.[8]
 
 
 23
 In fact, in Laufer v. Ostrow, supra, the New York Court of Appeals sustained jurisdiction even though the defendant corporation had no office, telephone or bank account in New York. Instead, the Court relied on the fact that the defendant employed sales representatives in New York to solicit and service New York accounts, which employees were visited by the president of defendant corporation, who exercised supervisory control over them, approximately eight to ten times a year. See 55 N.Y.2d at 311, 434 N.E.2d at 695, 449 N.Y.S.2d at 459-60; accord Ring Sales Co. v. Wakefield Engineering, Inc., 90 A.D.2d 496, 497, 454 N.Y.S.2d 745, 746 (2d Dep't 1982).[9]
 
 
 24
 This Court's decision in Aquascutum, supra, is not to the contrary. In that case the Court noted that "where the activities in addition to solicitation have been particularly skimpy, the courts upholding personal jurisdiction have considered it worthy of comment that the defendant was represented in New York by its own employees rather than by an independent contractor." 426 F.2d at 212. Thus, Aquascutum did not hold or even suggest that a defendant must maintain an office in New York, but noted only that a defendant's presence in New York in addition to solicitations must amount to more than "paying persons to perform essentially mechanical tasks for it." 426 F.2d at 212 (discussing Frummer v. Hilton Hotels Int'l, supra ).
 
 
 25
 Having concluded that the absence of a permanent locale in New York is not in itself dispositive of the issue of personal jurisdiction under CPLR 301, we must proceed to consider whether the district court clearly erred in finding that the record as a whole failed to establish by a preponderance of the evidence an adequate predicate for such jurisdiction. We conclude that it did not.
 
 
 26
 Alexander & Alexander argues that the thirteen business trips made by employees of the Sedgwick defendants to New York, eight by Sedgwick International employees and five by Sedgwick Marine, constitute "substantial and continuous" solicitation in this state. However, these business trips were of short duration, were by different employees, involved a number of accounts, including large multi-national corporations headquartered in New York, and in some instances concerned contacts that were not related to New York in any way. Moreover, these solicitations occurred sporadically over a period of eighteen months. These contacts are insufficient to establish the systematic and continuous presence within the state that New York law requires.[10] See, e.g., Aquascutum, supra, 426 F.2d at 211-12 (visits to solicit business in New York "every few months" insufficient to sustain jurisdiction); Hoffritz, supra, 763 F.2d at 57-58 (fifty-four visits to New York to discuss business with plaintiff insufficient); New World Capitol Corp. v. Poole Truck Line, Inc., 612 F.Supp. 166, 172 (S.D.N.Y.1985) (eight visits over four years insufficient); Savoleo v. Couples Hotel, 136 A.D.2d 692, 693, 524 N.Y.S.2d 52, 52 (2d Dep't 1988) ("occasional" business trips to New York insufficient); Pacamor Bearings, Inc. v. Molon Motors & Coil, Inc., 102 A.D.2d 355, 357-58, 477 N.Y.S.2d 856, 857 (3d Dep't 1984) (nine trips to New York by sales managers over twenty months insufficient).
 
 
 27
 Nor do these sporadic visits when taken in connection with the defendant's conduct in placing insurance business in New York or New York insurance business in London support Alexander & Alexander's claim that there is personal jurisdiction over the Sedgwick defendants in this case. Those transactions must be considered not in isolation, but against the background of multi-national entities doing a much larger business of which these transactions were but a small part. Considering those transactions in that context, as we must, we conclude that the District Judge did not clearly err in finding that the record does not establish by a preponderance of the evidence a sufficient predicate for jurisdiction under CPLR 301.[11]
 
 
 28
 Finally, we note that the Sedgwick defendants' relationship with SIMS does not provide a basis for jurisdiction as a component of the "plus" portion of the solicitation-plus test for jurisdiction.[12] A business relationship with a New York entity does not provide a sufficient basis for jurisdiction at least in the absence of a showing that that company has become an agent or division of the company over which the plaintiff seeks to exercise personal jurisdiction. See Insurance Co. of PA v. Centaur Ins. Co., 590 F.Supp. 1187, 1189 (S.D.N.Y.1984).
 
 CONCLUSION
 
 29
 For the reasons stated above, the decision of the district court dismissing the third-party complaint against the Sedgwick defendants for lack of personal jurisdiction is affirmed.
 
 
 
 *
 The Honorable John E. Sprizzo, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The Underwriters also moved to dismiss for lack of personal jurisdiction. That motion was denied, see Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 720 F.Supp. 26 (S.D.N.Y.1989), and is presently the subject of a separate appeal to this Court, which has been certified to the New York Court of Appeals pursuant to N.Y.Rules of Court Sec. 500.17(b) (McKinney 1990). See Alexander & Alexander Servs., Inc. v. Lloyd's Syndicate 317, 902 F.2d 165 (2d Cir.1990). The New York Court of Appeals has accepted that certification. See Alexander & Alexander Servs., Inc. v. Lloyd's Syndicate 317, 76 N.Y.2d 760, 559 N.Y.S.2d 237, 558 N.E.2d 39 (1990)
 
 
 [2]
 The district court stated that Sedgwick Marine had sent representatives to New York on three occasions. However, the record indicates that there were five such visits
 
 
 [3]
 These amounts represent a combined total of the monies the entities received in both American dollars and foreign currency converted to American dollars
 
 
 [4]
 There is no question that personal jurisdiction in this diversity action is governed by New York law. See United States v. First Nat'l City Bank, 379 U.S. 378, 381-82, 85 S.Ct. 528, 530-31, 13 L.Ed.2d 365 (1965); Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir.1963) (en banc)
 
 
 [5]
 Alexander & Alexander has not argued that Sedgwick's activities in New York are related to the Landoil transaction at issue in this litigation. Therefore, New York's long-arm statute, CPLR 302, which permits the exercise of long-arm jurisdiction over actions based upon transactions in New York, is not applicable
 
 
 [6]
 Our review of the memoranda submitted to the district court indicates that Alexander & Alexander did not mention, or cite cases relevant to, the solicitation-plus test for jurisdiction in either of its memoranda in opposition to the Sedgwick defendants' motion
 
 
 [7]
 We note that several district courts appear to have read our decision in Beacon Enterprises to impose a per se requirement that the solicitation-plus theory of jurisdiction imposes a requirement that the defendant maintain a "permanent locale" in New York. See, e.g., B.E.M. Merchandising v. Nationwide Shopper Sys., Inc., 1989 WL 74958, 1989 U.S.Dist. LEXIS 6994 (S.D.N.Y. June 26, 1989) (88 Civ. 8057); Standard Enterprises, Inc. v. Bag-it, Inc., 673 F.Supp. 1216, 1219 (S.D.N.Y.1987); Transistor Devices, Inc. v. Tracor, Inc., 654 F.Supp. 601, 603 (E.D.N.Y.1987); Baldwin Hardware Corp. v. Harden Indus., Inc., 663 F.Supp. 82, 85 (S.D.N.Y.1987)
 
 
 [8]
 It is also relevant to note that in Bryant, supra, a case relied on in both Beacon and Stark, the defendant did in fact have a permanent location in New York. See 15 N.Y.2d at 432, 208 N.E.2d at 441-42, 260 N.Y.S.2d at 629. Therefore, the New York Court of Appeals had no reason to even consider the issue of whether a permanent locale in New York was essential to the solicitation-plus rule
 
 
 [9]
 Although the court in Meunier v. Stebo, Inc., 38 A.D.2d 590, 591, 328 N.Y.S.2d 608, 611 (2d Dep't 1971) stated that "[c]ontinuity of action from a permanent locale is essential" to a finding of jurisdiction in New York, the Court declines to follow that case in light of the subsequent decision of the Court of Appeals in Laufer
 
 
 [10]
 Thus, for example, renting a hotel room to solicit business on a systematic and regular basis might be the functional equivalent of an office in New York and therefore be sufficient to establish presence within the state. However, something more than the sporadic presence which this record discloses is required
 
 
 [11]
 Our holding here will not, as Alexander & Alexander maintains, result in an exemption from jurisdiction for multinational corporations who do only a small part of their business in New York. Such corporations can still be sued in New York for a particular transaction connected to New York if the cause of action arises out of that transaction, no matter how insignificant a portion of its total revenues that transaction represents. See CPLR 302; Hoffritz, supra, 763 F.2d at 59; Frummer, supra, 19 N.Y.2d at 535-36, 227 N.E.2d at 852-53, 281 N.Y.S.2d at 43
 
 
 [12]
 Defendants have not argued to this Court that SIMS can be considered to be so controlled by either or both of the Sedgwick defendants such that it could be viewed as an "agent" or a "mere department" of those entities, which would provide a basis for jurisdiction under "attribution" theories of jurisdiction. See Beech Aircraft, supra, 751 F.2d at 120-22; Frummer, supra, 19 N.Y.2d at 537-38, 227 N.E.2d at 854, 281 N.Y.S.2d at 44-45; see generally Weinstein, Korn & Miller, supra, at p 301.16, at 3-38 to 3-49
 Thus, Alexander & Alexander's reliance upon Katz Communications, supra, is misplaced. In that case this Court concluded that the defendant corporation was subject to jurisdiction in New York because the employees of the defendant corporation came to New York to meet with employees of the plaintiff and solicit business in New York to such an extent that "the Katz [plaintiffs's] office was made virtually a division of the defendant's business." 705 F.2d at 24. Alexander & Alexander has not argued that there are any New York entities, including SIMS, that could similarly be considered to have become a "division" of either of the Sedgwick defendants' businesses.