J.L.B. EQUITIES, INC., Plaintiff,

v.

OCWEN FINANCIAL CORPORATION,
Defendant.

No. 99 CIV. 10000(BDP).

United States District Court,
S.D. New York.

March 2, 2001.

Joel L. Miller, Miller & Wrubel, P.C., New York City, for Plaintiff.

Christopher M. Wilson, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P., New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff J.L.B. Equities, Inc., a Delaware corporation located in Elmsford, New York ("JLB"), commenced this diversity action in September 1999 against Ocwen Financial Corporation ("Ocwen") alleging breach of contract. Ocwen moves to dismiss the Complaint on the grounds that (i) this Court lacks personal jurisdiction over the defendant, and (ii) venue is not proper in this District. *See* Fed.R.Civ.P. 12(b)(2) & (3). For the following reasons, the defendant's motion is granted.

## BACKGROUND

Ocwen is a publicly traded holding company located in Florida with assets totaling almost $3.3 billion. It owns a number of subsidiaries engaged in financial services. Its primary function is cash management, deciding where to invest the available cash of its subsidiaries. According to the plaintiff, Ocwen maintains a custodial account—which has held over $2 billion worth of securities and generated nearly $25 million in interest income from 1997 to 1999—with the Bank of New York, which is located in New York. Moreover, JLB contends that one of Ocwen's banking subsidiaries, Ocwen Federal Bank (the "Bank" or the "Ocwen Bank"), owns and sells real property in New York, services New York mortgages and solicits brokered deposits in New York. The Court assumes, for purposes of this motion, that the Ocwen Bank is subject to the general jurisdiction of the New York courts.

According to the Complaint, JLB arranged a relationship between City Mortgage Company, a United Kingdom company located in London, England ("City Mortgage"), and Greenwich International, Ltd., a Bermuda corporation located in London, England ("Greenwich"), whereby City Mortgage sold mortgages originated in the U.K. to Greenwich, which would

then securitize the mortgages. In May 1995, City Mortgage entered into a contract agreeing to pay JLB a commission based upon the value of the mortgages which were originated by City Mortgage and securitized by Greenwich (the "Fee Agreement").

In April 1998, City Mortgage's parent company, Cityscape Financial Corporation ("Cityscape"), sold substantially all of City Mortgage's assets to Ocwen pursuant to a sale agreement (the "Asset Sale Agreement"). According to the plaintiff, Ocwen agreed to assume most of City Mortgage's outstanding contracts on that date, including the Fee Agreement. The Complaint alleges that in June and November 1998, Greenwich securitized mortgages worth over £340 million on behalf of Ocwen, a substantial portion of which included loans originated by City Mortgage. According to the plaintiff, these securitizations triggered Ocwen's obligation to make payments to JLB under the Fee Agreement. To date, since Ocwen has not made any payments to JLB, JLB filed this action.

In early 2000, Ocwen moved to dismiss the Complaint on the grounds that this Court lacked personal jurisdiction and that venue was not proper in this District. Fed.R.Civ.P. 12(b)(2) & (3). By Order on May 24, 2000, this Court found that the defendant's motion was premature and ordered the parties to conduct discovery on the issue of jurisdiction. Currently before the Court is defendant's reinstated motion—discovery having been completed—seeking dismissal of the Complaint on the grounds previously stated.

## DISCUSSION

■ In a diversity action, personal jurisdiction is governed by the law of the forum state. *See United States v. First Nat'l City Bank,* 379 U.S. 378, 381–82, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963) (en banc). In responding to a Rule 12(b)(2) motion, the plaintiff "bears the burden of proving by a prepon-

derance of the evidence that personal jurisdiction exists." *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990). Because the Court has not held a hearing on the issue, the plaintiff need only make a *prima facie* showing of jurisdiction. Moreover, "all pleadings and affidavits must be construed in the light most favorable to [the plaintiff] and all doubts must be resolved in the [plaintiff's] favor." *Id.; Hoffritz For Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Where, as here, however, the parties have engaged in extensive discovery concerning the defendant's contacts with the state, JLB's *prima facie* showing must include an averment of facts that, if credited by the trier of fact, would suffice to establish personal jurisdiction over Ocwen. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999).

The Court must follow a two-step procedure to determine whether personal jurisdiction exists. First, the Court must decide whether a statutory basis for personal jurisdiction exists under the New York Civil Practice Law and Rules (the "C.P.L.R."). Second, if a statutory basis does exist, the Court must conduct a constitutional inquiry to determine whether the exercise of personal jurisdiction is consistent with the requirements of due process. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Because the Court finds there is no statutory basis to exercise personal jurisdiction over Ocwen, it does not reach the constitutional due process issue.

## I. C.P.L.R. § 301

■ Section 301, as construed by the New York courts, permits the general exercise of personal jurisdiction over a foreign corporation if it is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *McGowan v. Smith,* 52 N.Y.2d 268, 272, 419 N.E.2d 321, 437 N.Y.S.2d 643 (1981) (internal quo-

tations omitted). Accordingly, "New York law requires that the defendant be present in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Landoil*, 918 F.2d at 1043 (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917)).

 The test has been described as simple and pragmatic, but necessarily fact-sensitive. *See Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 432, 208 N.E.2d 439, 260 N.Y.S.2d 625 (1965); *Landoil*, 918 F.2d at 1043. In determining jurisdiction, New York courts have generally focused on the following factors: "The existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." *Id.*

JLB does not dispute the defendant's contention that Ocwen maintains no New York office, has no personnel in New York and does not solicit business directly in New York. Rather, JLB asserts that Ocwen is "doing business" in the state in two ways: (1) by buying and selling securities through its custodial account with the Bank of New York, and (2) through the New York activities of its wholly-owned banking subsidiary.

### A. Ocwen's Custodial Bank Account

 It is recognized that the existence of a bank account in New York is generally not sufficient to confer personal jurisdiction over a foreign defendant. *See Grove Valve & Regulator Co. v. Iranian Oil Servs. Ltd.*, 87 F.R.D. 93 (S.D.N.Y. 1980) (holding that foreign corporation's maintenance of local bank accounts did not amount to doing business within the state); *Weinberg v. Colonial Williamsburg, Inc.*, 215 F.Supp. 633, 639–40 (E.D.N.Y.1963) ("Certainly the mere existence of a bank account is not conclusive as to the fairness of subjecting defendant to suit in this forum."). At least one court has noted an exception to this general rule and has found jurisdiction where the defendant conducted substantially all of its business through the bank account at issue. *See United Rope Distributors, Inc. v. Kimberly Line*, 785 F.Supp. 446, 450 (S.D.N.Y. 1992) (holding that where defendant conducted "substantially all" of its activities through a New York bank account, including payment of wages, a *prima facie* showing of personal jurisdiction was made).

Here, the records submitted by the plaintiff, viewed in the light most favorable to JLB, do not demonstrate that Ocwen's activity conducted through the Bank of New York account was substantial in 1999, the relevant year for determining jurisdiction. *See Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.*, 41 F.Supp.2d 453, 457 (S.D.N.Y.1999) (recognizing that a corporation's presence under C.P.L.R. § 301 is determined at the time an action is commenced). According to plaintiff's exhibits, Ocwen transferred only 14 securities to or from custody in 1999, resulting in a negative net interest of $750,000. Given the fact that Ocwen's assets exceed $3 billion, this rather limited activity does not constitute "substantially all" of Ocwen's business.

Moreover, the plaintiff does not dispute the affidavit testimony of Ocwen's chief executive officer, William Erbey, which characterizes the account as a custodial account, used simply as a depository to hold securities for safekeeping. In this respect, the Bank of New York is used as a custodian through which it holds securities bought or sold by Ocwen for future redelivery and sale. Contacts with New York through the use of such accounts are incidental ones that do not establish a basis for general jurisdiction under C.P.L.R. § 301. *See Colson Services Corp. v. Bank of Baltimore*, 712 F.Supp. 28, 32 (S.D.N.Y. 1989) (finding no personal jurisdiction where "banking transactions in New York were limited to the maintenance of custodial accounts in which securities ... were deposited for safekeeping."); *see also National Sun Ind., Inc. v. Dakahlia Commercial Bank*, 113 F.3d 1229, 1997 WL

218789, *2 (2d Cir. May 2, 1997) ("Although substantial funds were deposited and withdrawn in [plaintiff's] account, we cannot conclude that the maintenance of that account constituted doing business" in New York).

### B. Ocwen's Banking Subsidiary

■ The mere presence of a subsidiary in New York does not establish the parent's presence in the state. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir. 1984). For New York courts to have personal jurisdiction in that situation, "the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent." *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir.1998).

■ To be an agent of the parent, the plaintiff must show that the subsidiary "does all the business which [the parent] could do were it here by its own officials." *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967). Here, the plaintiff fails to show that the Ocwen Bank was an agent of Ocwen because JLB does not state facts that show the Ocwen Bank conducted business in New York on behalf of Ocwen.

Ocwen is a holding company whose business is the management and investment of the excess cash of its subsidiaries. Ocwen's primary function is to hold the equity securities in its subsidiaries. In contrast, the Bank is a savings and loan institution, engaged in the specialty financial services business and the servicing of residential and commercial mortgages. Plaintiff does not aver a single fact which could, if credited by the trier of fact, demonstrate that the Bank conducted business in New York that Ocwen would have done if it were in state with its own officials. *Compare with Wiwa v. Royal Dutch Petrol. Co.,* 226 F.3d 88, 95–96 (2d Cir.2000)

(finding jurisdiction over a holding company based on agency theory where subsidiary operated an office in New York whose sole purpose was to attract investors to invest in the holding company). The mere fact that Ocwen is the Bank's holding company is not sufficient to establish personal jurisdiction over Ocwen. *See Porter v. LSB Industries, Inc.,* 192 A.D.2d 205, 214–15, 600 N.Y.S.2d 867 (4th Dep't 1993) ("LSB is a holding company whose business is investment, which differs from the business of Summit, which is distribution of machine tools. The business of the parent is carried out entirely at the parent level, and Summit cannot be deemed to be conducting the parent's business as its agent.").[1]

■ Moreover, the plaintiff fails to show that the Bank is a mere department of Ocwen. In order to adequately demonstrate that a subsidiary is a department of its parent, New York courts consider four factors: "first, common ownership ...; second, financial dependency of the subsidiary on the parent corporation; third, the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and fourth, the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." *Jazini,* 148 F.3d at 185 (internal quotations omitted).

Here, other than common ownership, the remaining factors strongly counsel against the exercise of personal jurisdiction over Ocwen. First, the plaintiff cannot, and does not, adequately demonstrate that the Bank is dependent upon Ocwen for funds. To the contrary, the facts alleged suggest that the Bank generates the bulk of Ocwen's income. *See Porter,* 192 A.D.2d at 214, 600 N.Y.S.2d 867 ("It does not appear that the subsidiary is financial-

---

1. JLB finds it "significant" that Ocwen has "meaningful contacts" with New York through other subsidiaries and agents. However, other than listing these entities by name, JLB fails to sufficiently set forth facts indicating that any of them performed Ocwen's business in New York to confer personal jurisdiction based on an agency theory.

ly dependent on the parent. On the contrary, it appears that the parent, as a holding company ..., is financially dependent on its subsidiaries.").

Second, with regard to interference by Ocwen in the selection of personnel and the observance of corporate formalities, the plaintiff fails to sufficiently state facts showing parental intrusion on personnel decisions, and does not present evidence indicating that corporate identities were compromised. Rather, JLB largely relies upon the fact that Ocwen and the Ocwen Bank have overlapping officers and directors. It has been established that overlapping officers and directors are "intrinsic to the parent-subsidiary relationship," and that they are not determinative as to whether the subsidiary is a "mere department" of the parent. *Porter*, 192 A.D.2d at 214, 600 N.Y.S.2d 867; *see also Jazini*, 148 F.3d at 185.

Finally, the plaintiff is unable to show that Ocwen exerts any significant level of control over the Ocwen Bank's marketing and operational policies. Indeed, JLB does not refute Erbey's affidavit testimony that Ocwen maintains a very limited role with respect to its subsidiaries. In the absence of direct evidence of control, JLB relies upon Ocwen's web page, which, according to JLB, treats Ocwen and the Ocwen Bank as one. However, the Court is not persuaded that a failure to distinguish between parent and subsidiary on a web page is sufficient to show that the parent controls the subsidiary's marketing and operational policies. An advertising strategy deciding not to present to its consumers the existence of a parent-subsidiary relationship is not equivalent to a showing that the parent corporation exercises any control over its subsidiary's operational or marketing activities.

Moreover, JLB refers to Ocwen's consolidated annual report to support the contention that Ocwen controls its subsidiary's operational policies. The fact that Ocwen has consolidated its annual report with the Ocwen Bank, however, is not a sufficient

basis to show that the Ocwen Bank is a mere department of the defendant. As our Court of Appeals has recognized, consolidated financial statements are required by generally accepted accounting principles where the parent corporation owns more than 50% of the subsidiary's stock. *See Beech Aircraft*, 751 F.2d at 121 n. 3. Furthermore, because "consolidated financial reporting is typical in a parent-subsidiary relationship, a mere department relationship cannot be established solely on the basis of such reporting." *Cornell v. Assicurazioni Generali S.p.A.*, 2000 WL 284222, *4 (S.D.N.Y.2000).

Because JLB has failed to aver facts showing that the Ocwen Bank is either an agent or a mere department of Ocwen, the Ocwen Bank's contacts with New York do not serve as a basis for exercising jurisdiction over Ocwen pursuant to C.P.L.R. § 301.

## II. C.P.L.R. § 302

New York's long-arm statute, C.P.L.R. § 302, provides, in relevant part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state.

Accordingly, C.P.L.R. § 302(a)(1) contains two requirements relevant to this action: (1) the non-domiciliary must transact business within the state, and (2) the claim against the non-domiciliary must arise out of that business activity. *See Mantello v. Hall*, 947 F.Supp. 92, 99 (S.D.N.Y.1996).

The parties do not dispute that City Mortgage transacted business in New York as a result of its 1995 contacts with the state during the negotiation of the Fee Agreement. The question is whether Ocwen, as the alleged successor to the Fee Agreement, is subject to personal jurisdic-

tion in New York as a result of having purportedly assumed City Mortgage's obligations when Ocwen executed the Asset Sale Agreement in 1998.

■ In the absence of a merger, the exercise of jurisdiction must be based on the acts of the defendant, not on the acts of a contractual predecessor.[2] *See Viacom*, 774 F.Supp. at 864. To show that Ocwen transacted business in New York, JLB argues that: (1) during negotiations of the Asset Sale Agreement (through which the Fee Agreement was allegedly assumed), Ocwen made contacts with New York; and (2) Ocwen assumed an on-going contract with a New York based company, and then ratified it by securitizing loans with Greenwich.

■ As an initial matter, Ocwen's purported contacts with New York relating to the negotiation of the Asset Sale Agreement—even if sufficient to be considered "transacting business" in the state—is inapposite with respect to the personal jurisdiction inquiry under C.P.L.R. § 302, as JLB's breach of contract claim arises out of the Fee Agreement, not the Asset Sale Agreement.[3] *See Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir.1996) ("A claim arises out of defendant's transaction of business in New York when there exists a substantial nexus between the business transacted and the cause of action sued upon.") (internal quotations omitted). JLB is not, and never was, a party to the Asset Sale Agreement. Further, any purported connection between the Fee Agreement and the Asset Sale Agreement is minimal, and the plaintiff does not dispute that the Fee Agreement was never mentioned in the Asset Sale Agreement, nor that negotiations never specifically contemplated the Fee Agreement. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) (stating that for a cause of action to arise out of a defendant's New York contacts, it must be "sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business.").

■ With regard to Ocwen's alleged assumption of the Fee Agreement and its subsequent ratification, JLB fails to make an adequate showing that Ocwen transacted business in New York—namely, that the defendant " 'purposefully availed [itself] of the privilege of conducting activities within New York and thereby in-

---

**2.** In its initial opposition papers, JLB suggested that discovery may be necessary to determine whether the sale of City Mortgage's assets to Ocwen was, in fact, a *de facto* merger between the two entities. *See Viacom International, Inc. v. Melvin Simon Productions, Inc.*, 774 F.Supp. 858, 864 (S.D.N.Y.1991) (noting that the limited circumstance where a successor-in-interest may be subject to jurisdiction based on the activities of the predecessor is where the two parties have merged). However, JLB makes no mention of this issue in its current papers—submitted after the completion of discovery—and therefore fails to set forth a factual predicate which would, if credited, support the existence of such a merger.

**3.** In any event, it is likely that the alleged contacts with New York by Ocwen during the negotiation of the Asset Sale Agreement are insufficient to confer personal jurisdiction under C.P.L.R. § 302. JLB largely relies upon Ocwen's contacts in the form of faxing documents to City Mortgage's parent in New York,

conducting phone conversations with parties in New York, and retaining New York bankers and lawyers. Without evidence showing that the defendant used these communications as a means of "projecting [itself] into the local commerce," *National Tel. Dir. Consultants, Inc. v. Bellsouth Advertising & Publ. Corp.*, 25 F.Supp.2d 192, 196–97 (S.D.N.Y.1998), these kinds of contacts do not typically establish that Ocwen transacted business in the state. *See id.* at 196 (S.D.N.Y.1998) (transacting business may not be inferred "from mere acts of mailing and telephoning plaintiff"); *Worldwide Futgol Assoc., Inc. v. Event Entertainment, Inc.*, 983 F.Supp. 173, 177 (E.D.N.Y. 1997) ("[C]onducting contractual negotiations by phone, fax or mail with a party in New York does not constitute the transaction of business within the state."); *PaineWebber, Inc. v. Westgate Group, Inc.*, 748 F.Supp. 115, 120–21 (S.D.N.Y.1990) (rejecting exercise of personal jurisdiction, despite the fact that defendant engaged a New York investment bank).

vok[ed] the benefits and protections of its laws.'" *Fort Knox Music, Inc. v. Baptiste,* 203 F.3d 193, 196 (2d Cir.2000) (quoting *Parke–Bernet Galleries v. Franklyn,* 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)). "In order to determine whether a party has transact[ed] business in New York, a court must look to the totality of circumstances concerning the party's connections to the state." *Fort Knox,* 203 F.3d at 196 (internal quotations omitted); *see also Agency Rent A Car,* 98 F.3d at 29 (citing four factor non-exclusive test).

While courts have held that even a single transaction in New York can be sufficient to invoke jurisdiction under C.P.L.R. § 302, *see PDK,* 103 F.3d at 1109, New York courts have also required that such contacts with the forum are adequate "so long as the defendant's activities [in New York] were purposeful." *Id.; see also CutCo Ind., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986) ("the statutory test may be satisfied by a showing of ... purposeful acts") (internal quotations omitted); *Viacom,* 774 F.Supp. at 862 (citing cases); *Don King Prods., Inc. v. Douglas,* 735 F.Supp. 522, 527 (S.D.N.Y.1990) (holding that § 302 analysis requires purposeful acts in New York by defendant).

Here, the plaintiff fails to sufficiently establish that Ocwen made purposeful contacts with New York. *See Sterling National Bank and Trust Co. of New York v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975) ("The proper inquiry ... is whether looking at the totality of the defendant's activities within the forum, purposeful acts have been performed in New York by the foreign corporation in relation to the contract, albeit preliminary or subsequent to its execution.") (internal quotations omitted); *McGowan,* 52 N.Y.2d at 271, 437 N.Y.S.2d 643, 419 N.E.2d 321 ("[T]here must have been some purposeful activities within the State that would justify bringing the nondomiciliary defendant before the New York courts").

It is not disputed that all of Ocwen's acts related to the 1998 mortgage securitizations with Greenwich occurred in the United Kingdom. The plaintiff would have this Court exercise personal jurisdiction over a Florida defendant based solely upon transactions performed in the United Kingdom with a U.K. company because they purportedly triggered an obligation to pay JLB, a New York company, commissions in New York. While this scenario may show that Ocwen purposefully transacted business in the United Kingdom, its does not, without more, indicate that Ocwen purposefully transacted business in New York, nor does it show that Ocwen "purposefully [sought] the benefits of New York law or local commerce." *National Tel.,* 25 F.Supp.2d 192, 196 (S.D.N.Y.1998); *see also Unlimited Care, Inc. v. Visiting Assoc. of Eastern Mass., Inc.,* 42 F.Supp.2d 327, 331–32 (S.D.N.Y.1999) (holding that the mailing of payments voluntarily to New York does not confer personal jurisdiction); *First City Savings Bank v. Keener,* 685 F.Supp. 58, 61 (S.D.N.Y.1988) (holding that an Indiana resident's execution of a promissory note payable in New York was insufficient for personal jurisdiction purposes).

JLB's reliance upon *Applied Hydro–Pneumatics, Inc. v. Bauer Manufacturing, Inc.,* 68 A.D.2d 42, 416 N.Y.S.2d 817 (2d Dep't 1979) is not persuasive. That decision—issued more than twenty years ago and admittedly "not free from doubt," *id.* at 46, 416 N.Y.S.2d 817—involved allegations of fraud and illegal transfers of assets by one defendant to another in order to avoid payment obligations. There, one of the defendants, Bauer/Electro, Inc. ("Bauer/Electro"), purchased the encumbered assets of its co-defendant, Bauer Manufacturing, Inc. ("BMI"), at a private sale. Both Bauer/Electro and BMI shared a number of common executive officers. Prior to the sale, the plaintiff, as New York sales agent for BMI, secured two orders from customers in exchange for a future commission from BMI. After the sale of BMI, the orders were fulfilled by

Bauer/Electric instead, which refused to pay the commission to the plaintiff. After the plaintiff filed suit in New York, Bauer/Electric, a Connecticut corporation, claimed that the New York court's lacked personal jurisdiction over it under C.P.L.R. § 302.

In a fact-specific decision that was based "on the present state of the record," the Appellate Division decided that Bauer/Electric's "voluntary election" to complete the contract with the plaintiff constituted a "[n]unc pro tunc ratification and adoption of BMI's acts in New York." *Id.* In particular, the court relied upon facts showing that Bauer/Electric's vice president, Raymond Dukes, had specific knowledge of BMI's agreement to pay the commission to plaintiff when he was vice-president of BMI. Moreover, the court found relevant that BMI's then-president (who, after the sale of BMI's assets, became an officer of Bauer/Electric) personally delivered a letter to plaintiff's officers in New York acknowledging the commission to be paid to the plaintiff in connection with the two orders it secured. Prior to BMI's sale, BMI sent another letter to the plaintiff specifically promising to fulfill its contractual obligations to the plaintiff. Coupled with the alleged fraudulent transfer of BMI's assets to Bauer/Electric and Bauer/Electric's voluntary decision to complete the order, the court found that Bauer/Electric voluntarily adopted BMI's contacts with New York, subjecting it to personal jurisdiction under C.P.L.R. § 302.

Here, JLB fails to allege the key ingredients present in *Applied Hydro*. That court found that where a successor corporation shared a number of high level officers with its predecessor, specifically knew of its predecessor's New York contacts, knew that the predecessor had outstanding obligations to a New York company, voluntarily completed a contract with that New York corporation, and fraudulently acted to avoid those contractual obligations, a sufficient basis existed to conclude that the successor corporation adopted the New York contacts of its predecessor. In this case, none of those circumstances are asserted. No fraudulent behavior designed to defeat JLB's recovery is alleged, nor is there any indication that City Mortgage and Ocwen shared common officers. The plaintiff provides no factual basis to conclude that Ocwen's actions in the United Kingdom were conducted with purposeful knowledge of the Fee Agreement, of purported obligations to JLB, or of City Mortgage's New York contacts. Accordingly, there is no factual predicate for attributing City Mortgage's New York contacts in 1995 to Ocwen.

As JLB fails to sufficiently meet its burden to show that Ocwen "purposeful availed [itself] of the privilege of conducting activities within New York," no basis to exercise personal jurisdiction under C.P.L.R. § 302 exists. *Fort Knox,* 203 F.3d at 196 (internal quotations omitted).

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss for lack of personal jurisdiction is granted. The Clerk of the Clerk is ordered to dismiss the Complaint.

SO ORDERED.