OPINION OF THE COURT
Joseph Gerace, J.
This is a motion to add as a defendant, Syntex Corporation (Corporation), a Panamanian corporation with its sole United States office in Palo Alto, California. The Corporation challenges jurisdiction claiming it cannot be reached by the New York long-arm statute.
Infant twins allegedly suffered brain damage from their infant formula, Neo-Mull-Soy, which plaintiffs claim was not formulated correctly by defendant, Syntex Laboratories, Inc. (Laboratories).
Syntex Corporation owns Syntex USA which owns Syntex Laboratories.
Plaintiff has the burden of establishing jurisdiction under CPLR 302 (a) (3) (ii) by a showing that the nondomiciliary defendant (1) committed a tort outside New York, (2) injured plaintiffs in New York, (3) should have reasonably foreseen or expected its actions would have consequences within New York, and (4) derives substantial revenue from interstate or international commerce. (Fantis Foods v Standard Importing Co., 49 NY2d 317, 325.) The plaintiff has the burden of establishing jurisdiction. (Lamarr v Klein, 35 AD2d 248 [1970], affd 30 NY2d 757.) However, when the issue of jurisdiction is to be decided on the pleadings and without discovery, the plaintiff has only to make out a prima facie case of jurisdiction. (Beacon Enters. v Menzies, 715 F2d 757, 768 [2d Cir 1983].) Furthermore, where no evidentiary hearing has been held, all pleadings and affidavits must be construed most favorably to the plaintiffs. (Hoffritz For Cutlery v Amajac, Ltd., 763 F2d 55, 57 [2d Cir 1985].)
To establish the requirement that the nondomiciliary committed a tort outside New York, the question to be decided is not actual liability, but whether the defendant has committed any act which gives rise to a tort claim. (Lamarr v Klein, supra.)
The Fourth Department in Porter v LSB Indus. (192 AD2d 205, 213 [1993]) held that the parent-subsidiary relationship is insufficient to confer personal jurisdiction unless there is a *824 showing " 'that the subsidiary is, in fact, merely a department of the parent’.”
Attached to the affidavit of Lawrence B. Clark, Esq. were copies of several documents and testimony obtained in two Alabama cases against Syntex Corporation which clearly established that Corporation not only provided numerous significant regulatory, legal and quality control services to Laboratories, but that Laboratories literally was a department of Corporation. According to the affidavit and the supporting papers:
Corporation provides Laboratories the following:
1. interaction with the Federal Drug Administration (FDA) on behalf of Laboratories;
2. reviewing Neo-Mull-Soy labels for compliance with regulations and corporate policy and approval of Neo-Mull-Soy labels;
3. establishing an approval process for label changes for infant formulas;
4. reviewing Neo-Mull-Soy advertisements for compliance with regulations and corporate policy;
5. reviewing Neo-Mull-Soy promotional literature for compliance with regulations;
6. reviewing information furnished to the Physician’s Desk Reference for regulatory compliance;
7. reviewing materials used in training salesmen;
8. performing audits of Laboratories’ plants in conjunction with the quality assurance department for compliance with good manufacturing practices;
9. receiving notification of formula changes;
10. participating as a member of the quality assurance advisory committee which made the decision to recall the product; and
11. coordinating recall efforts.
Corporation provides the only personnel used for regulatory compliance.
Corporation provides to Laboratories the following services of the legal department:
1. reviewing Neo-Mull-Soy advertisements;
2. reviewing materials used in training salesmen;
3. receiving notification of formula changes; and
*825 4. participating as a member of the quality assurance advisory committee which made the decision to recall the product.
For a critical part of the life of the product, Corporation provided internal auditing services to Laboratories. From September 1978 through the recall of the oversight, Laboratories’ quality control was the responsibility of Corporation’s quality assurance and technical services (QATS) which was headed by Hyman Mitchner, formerly vice-president of quality control for Laboratories. This group’s responsibilities included the following:
1. auditing Syntex plants for conformance to industry, regulatory and internal standards;
2. assisting in analysis of problems and quality control/ product failures;
3. assisting in development or modification of specifications;
4. developing a central file for product information;
5. establishing quality assurance and good manufacturing practices policies;
6. providing educational materials to quality control; and
7. consultation services in quality control.
Plaintiffs assert that these activities by Corporation were essential to the distribution of defective formula, were performed negligently and that the torts committed by Corporation outside New York justify long-arm jurisdiction over Corporation.
Porter v LSB Indus. (supra) involved an action for injuries from operation of an allegedly defective "Rockland” lathe. Plaintiff tried to reach defendant with the long-arm statute because defendant was the registered owner of the trademark.
The Court stressed that: "plaintiff must show that defendant regularly transacted or solicited business, engaged in any other persistent course of conduct, or otherwise ' "purposefully directed” ’ its activities at residents of the forum”. (Porter v LSB Indus., supra, at 212.)
The Court held that to allow long-arm jurisdiction over a parent corporation, the parent’s control over the subsidiary must be so complete that the subsidiary is merely a department, instrumentality or arm, of the parent. It said: "the foreign parent’s control of the subsidiary is so pervasive that the corporate separation is more formal than real (Heller & Co. v Novacor Chems., 726 F Supp 49, 54, affd 875 F2d 856 [SD *826 NY — applying New York law]).” (Porter v LSB Indus., supra, at 213.)
The Court cites four factors to consider regarding control: (1) common ownership, directors and/or staff; (2) financial dependency; (3) extent of selection and assignment of executive personnel; (4) extent of control of marketing and operational policies.
In the real world, Laboratories literally is a department of Corporation; Laboratories couldn’t move its product across the street without Corporation’s active efforts and approval; Corporation exercised undisputed legal, regulatory and quality control authority; Corporation retained management and fiscal controls; Corporation provided services to Laboratories that are critical prerequisites to marketing and distribution of the formula throughout the United States of America.
Corporation’s control over Laboratories is so pervasive as to render Laboratories a department of Corporation. (See, Cannon Mfg. Co. v Cudahy Packing Co., 267 US 333 [1925].)
If New Yorkers cannot reach a foreign parent corporation which is as involved as Corporation under the facts in this case New York’s babies may twice be victims, first by a negligent product, and the second time by denial of access to its courts for the negligence.
The issue here is which parent is to be protected: a parent corporation as involved as Corporation in insuring that a product intended for children is marketed and distributed all over the United States, or the innocent parents of children crippled by a product intended for those children — parents who rely on the FDA approval, the advertising, the promotion, all the things Corporation did — and had to do — so that the product could be sold here?
Can anyone realistically doubt that Corporation and Laboratories intended to market and distribute the product to New York mothers, fathers and other infant caretakers? Corporation does not directly peddle the product, but if they did not provide these services, the product could not be marketed.
Plaintiff says this is not a case of vicarious liability, but a case where the Corporation may be liable for its own acts. This court agrees.
The affidavit of Carol J. Gillespie, corporate secretary, says Corporation’s principal activity is to provide administrative functions, approve budgets and conduct financial relations for itself and subsidiaries.
*827 This affidavit doesn’t tell the whole story. Management dictates quality control, labeling, formula changes and all the approvals and procedures identified by the Clark affidavit that must go through Corporation; these are significantly more than mere administrative detail. Moreover, these are continuous activities directed to all States where the product is marketed.
Corporation was not naive; it obviously could expect consequences (and benefits) from these activities throughout the United States.
Corporation argues it receives no revenues in New York, but, its quality control, labeling and formula changes related to FDA distribution and marketing, produce revenues to Laboratories, some of which flow to benefit Corporation. The CPLR says substantial revenues must be received but does not require that these revenues must relate to the particular activities of the defendant.
But for Corporation’s actions, the product could not have been delivered; because of its failure to act on their quality control information and authority, production of an allegedly harmful product was not halted. These and other actions by Corporation are the basis for plaintiffs’ claim.
Where an allegedly harmful substance is ingested in New York resulting injuries are deemed to occur at the place of exposure, not the place where the injury-causing substance was manufactured. (In re DES Cases, 789 F Supp 552, 570 [ED NY 1992].) Since plaintiffs’ injuries as a result of drinking Neo-Mull-Soy in New York occurred in New York, the second long-arm jurisdictional element is satisfied.
The third long-arm element under CPLR 302 (a) (3) (ii) requires that the nondomiciliary defendant should have reasonably foreseen that his actions would have consequences in New York, but not necessarily the specific event. Allen v Auto Specialties Mfg. Co. (45 AD2d 331, 333 [1974]) discussed this requirement: "Moreover, the statutory requirement of foreseeability relates to forum consequences generally and not to the specific event which produced the injury within the State. The statute does not require the defendant to foresee the specific consequences in New York of its allegedly tortious act.”
All that is required is that it be reasonably foreseen, instead of fortuitous.
Corporation surely knew that its services provided to Laboratories were essential to the marketing and distribution of *828 the formula and thus would have consequences in New York; thus the third long-arm jurisdictional requirement is met.
The final element to establish long-arm jurisdiction — that Corporation derives substantial revenue from interstate or international commerce — is virtually conceded.
Laboratories is the sole peddler, marketer, advertiser, and distributer of the formula, but, as meticulously outlined above, Corporation provides a number of services so critical to Laboratories’ activities that it couldn’t sell one container of formula without Corporation involvement. There is no doubt Laboratories could not function without the services provided by Corporation.
Corporation controls Laboratories’ activities "in significant ways.” Those activities are so tied into license, quality control, marketing and distribution that this court cannot separate them.
We are not dealing with shoe salesmen, french fries and hamburgers, VWs, Greek feta cheese or trademarks here; we are dealing with a product that cannot be marketed in New York without the formula review, quality control, and regulatory compliance and approval by the FDA, all of which are provided by Corporation. We are dealing with a product targeted for babies — a product affecting their health and well-being.
Corporation and Laboratories knew very well that New York State and its public relied on FDA approval of this product. This reliance was no surprise to Corporation.
The leading case International Shoe Co. v Washington, (326 US 310) requires "minimum contacts” and a concept of fair play and substantial justice. Fair play and substantial justice call for approval of jurisdiction in this case.
World-Wide Volkswagen Corp. v Woodson (444 US 286) and Burger King Corp. v Rudzewicz (471 US 462) maintain there must be fair warning to an out-of-State defendant so it might reasonably expect the possibility of a suit; the defendant must have purposefully directed activities at the forum State and the suit must result from injuries arising out of those activities. All these tests are met here.
Physical contacts with the forum State are not necessary "[s]o long as a commercial actor’s efforts are 'purposefully directed’ toward residents of another state.” (Burger King Corp. v Rudzewicz, supra, at 476.)
It further holds that States have "manifest interest” in *829 providing a forum for their residents to address grievances and where a party " 'purposefully derive[s] benefit’ * * * it [is] unfair [to be able] to escape having to account * * * for [the] consequences.” (Burger King Corp. v Rudzewicz, supra, at 474.)
It would be grossly unfair to allow Corporation to profit from, yet escape having to account for its acts connected with the formula beginning with getting FDA approval.
New York has a "manifest interest” in providing a forum for parents and babies who have been damaged by a defendant’s extensive involvement in getting the damage-producing product approved, seeing that it was labeled, and advertised to defendant’s satisfaction, saw that the sales troops were trained, and continuously monitored the product.
Hanson v Denckla (357 US 235, 253) is cited by Corporation and holds: "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.”
New York independently would not and could not permit the sale of this formula without FDA approval. Its citizens rely upon that approval. Laboratories represents it obtained that approval when in fact, known to Corporation, Laboratories and the FDA, approval was granted by the efforts of Corporation.
FDA approval, quality control, marketing and all the other services outlined in the Clark affidavit are too closely tied together to permit Corporation to escape the consequences of its acts.
In Fantis Foods v Standard Importing (49 NY2d 317, supra) the Court of Appeals understandably did not permit a CPLR 302 long-arm reach of a defendant in an action involving conversion of 1,200 barrels of feta cheese "in Greece or on the high seas”.
The Court dismissed the action because the only connection between the claimed conversion and any injury or foreseeable consequences in New York was the domicile or residence of the injured party. We have much, much more connection and foreseeability of consequences here; much, much more compelling justification for long-arm jurisdiction.
In the case of Computerized Radiological Servs. v Syntex Corp. (595 F Supp 1495 [ED NY 1984]), Syntex Corporation admitted liability for its wholly owned subsidiary. The case *830 was held governed by New York law, though the manufacturer was in California and even though the underlying contract was governed by California law by choice of the parties. An appeal on unrelated issues was decided by the Circuit Court of Appeals (786 F2d 72 [2d Cir 1986]).
Here, Syntex Corporation has availed itself of the privilege of orchestrating activities within the State of New York, thus invoking the benefits and protection of the laws in respect to the activities of one of its wholly owned subsidiaries. It would be offensive of "traditional notions of fair play and substantial justice” to say that an alien corporation may enter and submit to jurisdiction governed by New York law and hold that in another of its activities through another of its subsidiaries claim it has no contacts with the forum.
If Corporation is not subject to New York’s jurisdiction, plaintiffs will not be able to effectively pursue a prospective defendant whose acts (or nonaction) may have been a proximate cause of their injuries.
The decision to this point is predicated on the facts in the Lawrence Clark affidavit and the testimony and documents involved in the Alabama cases. Although that testimony and documents could not be introduced at trial here without more, they do create a legitimate basis for the conclusions drawn by this court. Thus, plaintiffs have made out a prima facie case of jurisdiction under the standards set by Beacon Enters. v Menzies (715 F2d 757, supra) and Hoffritz For Cutlery v Amajac, Inc. (763 F2d 55, supra).
Nevertheless, the affidavits of Jennifer E. Beinstock, Esq. and Carol J. Gillespie, corporate secretary of Corporation, and the recent decision of the Fourth Department, Schultz v Hyman (201 AD2d 956), prompt this court, pursuant to CPLR 2218, to direct a separate trial of the issue of personal jurisdiction of Corporation.
The motion to amend the complaint to bring in Syntex Corporation is reserved, pending a trial on jurisdiction pursuant to CPLR 2218.
The motion of plaintiff to amend the complaint to add Syntex Corporation is reserved, pending a hearing pursuant to CPLR 2218.
The motion of plaintiff to increase the ad damnum clause is denied, without prejudice.
*831 The motion of plaintiff to add fourth and fifth causes of action as to recall and reformulation is granted as to recall, denied as to reformation.
The motion to add claims of the father is denied.