# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**715**

**CA 11-02521**

PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, CARNI, AND LINDLEY, JJ.

---

JEFFREY CONSTANTINE, M.D., PLAINTIFF-RESPONDENT,

V                                    MEMORANDUM AND ORDER

STELLA MARIS INSURANCE COMPANY, LTD.,
DEFENDANT-APPELLANT,
MARY SERIO, NICHOLAS SERIO, AS PARENTS AND
NATURAL GUARDIANS OF NICOLE SERIO, A MINOR,
DEFENDANTS-RESPONDENTS,
ET AL., DEFENDANTS.

---

PHILLIPS LYTLE, LLP, BUFFALO (KENNETH A. MANNING OF COUNSEL), FOR
DEFENDANT-APPELLANT.

BROWN & TARANTINO, LLC, BUFFALO (TAMSIN J. HAGER OF COUNSEL), FOR
PLAINTIFF-RESPONDENT.

PAUL WILLIAM BELTZ, P.C., BUFFALO (WILLIAM A. QUINLAN OF COUNSEL), FOR
DEFENDANTS-RESPONDENTS.

---------------------------------------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Erie County (Joseph R.
Glownia, J.), entered February 10, 2011 in a declaratory judgment
action. The order, among other things, denied the motion of defendant
Stella Maris Insurance Company, Ltd. to dismiss the complaint for lack
of personal jurisdiction.

It is hereby ORDERED that the order so appealed from is affirmed
without costs.

Memorandum: As limited by its brief, defendant-appellant, Stella
Maris Insurance Company, Ltd. (SMI), appeals from an order denying its
motion pursuant to CPLR 3211 (a) (8) seeking to dismiss the complaint
in this declaratory judgment action on the ground that New York lacks
personal jurisdiction over it. SMI is a single-parent captive
insurance company doing business in the Cayman Islands. Its sole
shareholder, Catholic Health East (CHE), a not-for-profit Pennsylvania
corporation that is authorized to do business in New York, has a joint
operating agreement with Catholic Health System, which is the sole
member of Sisters of Charity Hospital (Sisters Hospital) in Buffalo.
CHE and its affiliates, including Catholic Health System and, in turn,
Sisters Hospital, are named as "covered persons" in the professional
liability policy issued by SMI to CHE. In the underlying medical
malpractice action, defendant Nicholas Serio alleges medical
malpractice by, inter alia, plaintiff in connection with the birth of

his daughter at Sisters Hospital.  Plaintiff commenced this action seeking a declaration that SMI is obligated to indemnify him in connection with the underlying medical malpractice action, but the sole issue before us is whether Supreme Court properly denied SMI's motion to dismiss the complaint for lack of personal jurisdiction.

CPLR 302 (a) provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:  (1) *transacts* any business within the state *or contracts* anywhere to supply goods or services in the state" (emphasis added).  "While the ultimate burden of proof rests with the party asserting jurisdiction, . . . in opposition to a motion to dismiss pursuant to CPLR 3211 (a) (8), [plaintiff] need only make a prima facie showing that the defendant [,here, SMI,] was subject to the personal jurisdiction of the Supreme Court" (*Cornely v Dynamic HVAC Supply, LLC*, 44 AD3d 986, 986).  We conclude that plaintiff sustained that burden here, and we therefore affirm.

As a preliminary matter, we agree with SMI that plaintiff failed to make a prima facie showing that SMI transacts business within New York State.  Insurance Law § 1101 (b) (1) governs acts in this state that constitute "doing an insurance business" for purposes of long-arm jurisdiction.  The record establishes that SMI and CHE negotiated the insurance contract in the Cayman Islands; that the policy was issued in the Cayman Islands, where it was delivered to CHE; and that CHE retains the policy in Pennsylvania (*see* § 1101 [b] [1] [A]).  Further, CHE pays premiums to SMI; SMI does not collect premiums from CHE's New York affiliates (*see* § 1101 [b] [1] [C]).  Thus, plaintiff failed to present prima facie evidence that any of the enumerated activities were conducted in this state, as required by Insurance Law § 1101 (b) (1) (A) and (C) (*cf. Caronia v American Reliable Ins. Co.*, 999 F Supp 299, 303 [ED NY]).  We note that, in any event, under the facts presented here, Insurance Law § 1101 (b) (2), which enumerates activities that "shall not constitute doing an insurance business in this state," would apply inasmuch as the policy was "negotiated, issued and delivered without this state in a jurisdiction in which [SMI] is authorized to do an insurance business," i.e., the Cayman Islands (§ 1101 [b] [2] [E]).  We therefore conclude that plaintiff failed to make a prima facie showing that SMI transacts business in New York State (*see* CPLR 302 [a] [1]).

We nevertheless conclude that plaintiff made a prima facie showing that SMI contracted in the Cayman Islands to provide services in New York (*see* CPLR 302 [a] [1]), and thus that the exercise of long-arm jurisdiction is appropriate (*see Insurance Co. of N. Am. v Pyramid Ins. Co. of Bermuda Ltd.*, 1994 WL 88754, *2 [SD NY]; *see generally Armada Supply Inc. v Wright*, 858 F2d 842, 849 [2d Cir 1988]; *Twin City Fire Ins. Co. v Harel Ins. Co. Ltd.*, 2011 WL 3480948, *2 [SD NY]; *Caronia*, 999 F Supp at 300-301).  Although, by its nature, a single-parent captive insurance company insures only its parent and, indeed, CHE is named as the insured in the policy, here, the policy itself states that the "persons insured" are the covered persons, i.e., CHE and its named affiliates, which include Catholic Health

System, the sole member of Sisters Hospital, as well as the employees and contract physicians of the covered persons (see generally Hudson Ins. Co. v Oppenheim, 35 AD3d 168). Further, plaintiff provided the deposition testimony of CHE's vice-president who also serves as SMI's president and CEO, who testified that the list of physicians who contract with Sisters Hospital is provided to SMI's broker and actuary, and that SMI issues a certificate of insurance to him for CHE and Catholic Health System. We therefore conclude that plaintiff made a prima facie showing that SMI contracted with CHE to insure professional liability risks in New York, and thus that it is subject to the exercise of long-arm jurisdiction (see Armada Supply Inc., 858 F2d at 849; see generally Hudson Ins. Co., 35 AD3d at 168).

We further conclude that "the exercise of jurisdiction comports with due process" (LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210, 214; see Andrew Greenburg, Inc. v Sirtech Can., Ltd., 79 AD3d 1419, 1420), i.e., that SMI has the requisite minimum contacts with New York (see LaMarca, 95 NY2d at 216), and that the "prospect of defending [this action] . . . comport[s] with traditional notions of fair play and substantial justice" (id. at 217 [internal quotation marks omitted]). Although SMI itself has no direct contacts with New York, we conclude that, based on its policy language that the contract physicians of Sisters Hospital, a "covered person," are "insured," the minimum contacts requirement has been met (see generally Hudson Ins. Co., 35 AD3d at 168-169). We further conclude that permitting the action to proceed in New York comports with notions of fair play and substantial justice inasmuch as the remaining defendants, as well as plaintiff, either are residents of New York or are authorized to do business in New York, and the alleged basis for liability occurred in New York (see generally Armada Supply Inc., 858 F2d at 849). Furthermore, we note that, in connection with a declaratory judgment action that SMI commenced against plaintiff in Federal District Court in Pennsylvania, SMI requested as alternative relief that the matter be transferred to Federal District Court in New York.

Finally, we agree with SMI that plaintiff failed to make a prima facie showing that jurisdiction exists on the alternative theories that it is a "mere department" of CHE, or that CHE is SMI's agent, and thus that CHE's actions may be attributed to SMI. Although CHE is the sole shareholder of SMI, and the two corporations share certain executive personnel and one board member, those are "factors [that] are intrinsic to the parent-subsidiary relationship and, by themselves, [are] not determinative" (Porter v LSB Indus., 192 AD2d 205, 214). Here, the record establishes that SMI and CHE maintain corporate formalities inasmuch as the policy was negotiated between CHE and the management company with which SMI contracts to run its day to day operations; that CHE does not have access to SMI's bank accounts; that there is no commingling of funds or investments; and that SMI's board, although appointed by CHE, owes a fiduciary duty to SMI. We therefore conclude that plaintiff has failed to make a prima facie showing that CHE's "control over [SMI's] activities '[are] so complete that [SMI] is, in fact, merely a department of [CHE]' " (id. at 213). Further, we reject plaintiff's contention that CHE, the parent corporation, acted as an agent of its wholly owned subsidiary

SMI with respect to doing business in New York in connection with Catholic Health System and Sisters Hospital (*see generally Frummer v Hilton Hotels Intl.*, 19 NY2d 533, 537-538, *rearg denied* 20 NY2d 758, *remittitur amended* 20 NY2d 737, 759, *cert denied* 389 US 923; *Jazini v Nissan Motor Co., Ltd.*, 148 F3d 181, 184-185).

All concur except PERADOTTO, J., who concurs in the result in the following Memorandum:  I respectfully concur in the result reached by the majority, namely, the affirmance of the order denying the motion of defendant-appellant, Stella Maris Insurance Company, Ltd. (SMI), to dismiss the complaint on the ground that New York lacks personal jurisdiction over it.  I agree with the majority that plaintiff made a prima facie showing that SMI contracted in the Cayman Islands to provide services in New York State within the meaning of CPLR 302 (a) (1), and thus that the exercise of long-arm jurisdiction is appropriate.  I write separately, however, because I further conclude that plaintiff also made a prima facie showing that SMI transacts business within New York pursuant to CPLR 302 (a) (1) and Insurance Law § 1101 (b) (1).

As set forth by the majority, SMI is a single-parent captive insurance company domiciled in the Cayman Islands.  SMI issued a professional liability insurance policy to its sole shareholder, Catholic Health East (CHE), a not-for-profit Pennsylvania corporation authorized to do business in New York.  CHE has a joint operating agreement with Catholic Health System, which is the sole member of Sisters of Charity Hospital (Sisters Hospital) in Buffalo.  Both Catholic Health System and Sisters Hospital are "covered persons" under the SMI policy issued to CHE.  Plaintiff commenced this action seeking a declaration that SMI is obligated to indemnify him in connection with the underlying medical malpractice action.  The underlying action arises from plaintiff's provision of obstetrical services at Sisters Hospital.  As noted by the majority, the sole issue before us is whether Supreme Court properly denied SMI's motion to dismiss the complaint for lack of personal jurisdiction.

Although it is well established that "the burden of proving jurisdiction is on the party asserting it" (*Roldan v Dexter Folder Co.*, 178 AD2d 589, 590), a plaintiff opposing a pre-answer motion to dismiss pursuant to CPLR 3211 (a) (8) for lack of jurisdiction "need only make a prima facie showing that personal jurisdiction exists" (*Opticare Acquisition Corp. v Castillo*, 25 AD3d 238, 243).  As relevant here, CPLR 302 (a) (1) provides that a New York court may exercise personal jurisdiction over a non-domiciliary who, in person or through an agent, "transacts any business within the state."  With respect to foreign insurance companies, Insurance Law § 1101 (b) (1) expressly provides in pertinent part that "any of the following acts in this state, effected by mail from outside this state or otherwise, . . . shall constitute doing business in the state within the meaning of [CPLR 302]:  (A) making, or proposing to make, as insurer, any insurance contract, including either issuance or delivery of a policy or contract of insurance to a resident of this state or to any firm, association, or corporation authorized to do business herein . . . ; [or] (C) collecting any premium . . . for any policy or contract of

insurance."

Contrary to the conclusion of the majority, I conclude that SMI is subject to long-arm jurisdiction pursuant to Insurance Law § 1101 (b) (1) (A) because it "ma[d]e . . . an[] insurance contract" covering a New York risk.  Insurance Law § 1101 (a) (1) broadly defines "insurance contract" as "any agreement or other transaction whereby one party, the 'insurer,' is obligated to confer benefit of pecuniary value upon another party, the 'insured' or 'beneficiary,' dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event."  Here, it is undisputed that Catholic Health System and Sisters Hospital, as well as their New York employees, are "covered persons" under the SMI insurance policy and, thus, they are insureds or beneficiaries within the meaning of Insurance Law § 1101 (a) (1).

The majority concludes that Insurance Law § 1101 (b) (1) (A) is inapplicable under the circumstances of this case because the record establishes that the SMI policy was negotiated and delivered to CHE in the Cayman Islands and was thereafter retained in Pennsylvania.  I disagree.  There is no question that, had SMI mailed the insurance policy to Catholic Health System or Sisters Hospital in New York or to CHE, which is authorized to do business in New York, section 1101 (b) (1) (A) would apply.  The statutory language does not, however, limit its application to policies physically delivered into New York.  The statute provides that "any of the following acts in this state, *effected by mail from outside this state <u>or otherwise</u>* . . . shall constitute doing business in the state" for purposes of long-arm jurisdiction, including "making . . . any insurance contract" (§ 1101 [b] [1] [A] [emphases added]).  In my view, the "or otherwise" language broadens the statute's applicability to any manner of making a contract in this state, not simply to "mail order" insurance arrangements.  Inasmuch as one of the primary purposes of Insurance Law § 1101 is to protect New York insureds from foreign insurance companies not licensed in New York, I conclude that the statute can reasonably be interpreted as "any of the following acts in this state, effected by mail from outside this state *or [in any other manner from outside this state]*" (§ 1101 [b] [1] [emphasis added]).  Thus, where an insurance company makes an insurance contract covering a New York risk, the applicability of Insurance Law § 1101 should not turn on whether the insurance company mails the contract to the insured in New York or delivers the contract to the New York insured in some other manner.  Here, SMI issued a policy covering a New York risk, i.e., malpractice claims stemming from medical incidents at Sisters Hospital and other New York health care facilities.  It is therefore, in my view, subject to jurisdiction pursuant to Insurance Law § 1101 (b) (1) (A).

The fact that CHE retained the policy in Pennsylvania and did not send a copy of the policy to the covered persons in New York should not alter the jurisdictional analysis.  "It has long been recognized that, '[I]t is the intention of the parties and not the manual

possession of a policy which determines whether there has been a delivery thereof. There must be an intention to part with the control of the instrument and to place it in the power of the insured or some person acting for [it]. Manual delivery to the insured in person is not necessary' " (*Ecstasy Limousine Inc. v Lancer Ins.*, 8 Misc 3d 1025[A], 2005 NY Slip Op 51285[U], *4-5). "Delivery . . . primarily concerns an insurer's intent; if an insurer has put the policy outside of its legal control, even if not outside its actual possession, delivery has occurred" (6 Thomas, New Appleman on Insurance Law Library Edition § 61.04 [7] [a], at 61-59 [2011]). Here, it is undisputed that the SMI policy covers Sisters Hospital and its employees in New York and, in my view, once SMI turned the policy over to CHE, the policy was no longer within SMI's legal control (*see generally Wanshura v State Farm Life Ins. Co.*, 275 NW2d 559, 564 [Minn]).

Unlike the majority, I further conclude that SMI collected premiums from Catholic Health System and/or Sisters Hospital in New York within the meaning of Insurance Law § 1101 (b) (1) (C). The record establishes that CHE collected funds from the "covered persons," including Catholic Health System and Sisters Hospital, to pay the premiums due to SMI under the policy. Catholic Health System received a bill for premiums due under the policy and remitted payment to CHE. CHE then paid SMI for the premiums owed under the policy. Although it appears that CHE collected premiums on behalf of SMI, that arrangement does not alter the fact that premiums collected from Catholic Health System and Sisters Hospital were paid to SMI for the policy. Moreover, the terms of the policy specifically provide that SMI has the right to assess additional premiums against all "covered persons," thereby including Catholic Health System and Sisters Hospital, and SMI directly issued certificates of insurance to Catholic Health System. I thus conclude that plaintiff made a prima facie showing that SMI "collect[ed] a[] premium . . . or other consideration [from the New York entities] for [the] policy or contract of insurance" issued to CHE (§ 1101 [b] [1] [C]).

I disagree with the majority's alternative conclusion that Insurance Law § 1101 (b) (2), the statutory exception to Insurance Law § 1101 (b) (1), applies to this case. Insurance Law § 1101 (b) (2) (E) provides that, "[n]otwithstanding the foregoing, the following acts or transactions, if effected by mail from outside this state by an unauthorized foreign or alien insurer duly licensed to transact the business of insurance in and by the laws of its domicile, shall not constitute doing an insurance business in this state, *but section [ 1213] of this chapter shall nevertheless be applicable to such insurers*: . . . (E) transactions with respect to policies of insurance on risks located or resident within or without this state . . . , which policies are principally negotiated, issued and delivered without this state in a jurisdiction in which the insurer is authorized to do an insurance business" (emphasis added). Insurance Law § 1213, entitled "Service of process on superintendent as attorney for unauthorized insurers," provides that its purpose is "to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain

insurance contracts.  The legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies.  In furtherance of such state interest, the legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to protect its residents and to define, for the purpose of this section, what constitutes doing business in this state" (§ 1213 [a]).

The statute goes on to provide that "*[a]ny of the following acts in this state, effected by mail or otherwise*, by an unauthorized foreign or alien insurer . . . is equivalent to and constitutes its appointment of the superintendent . . . to be its true and lawful attorney upon whom may be served all lawful process in any proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance, and shall signify its agreement that such service of process is of the same legal force and validity as personal service of process in this state upon such insurer" (§ 1213 [b] [1] [emphasis added]).  The acts include, in language closely mirroring Insurance Law § 1101 (b) (1), "the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein," "the collection of premiums, membership fees, assessments or other considerations for such contracts," or "any other transaction of business" (§ 1213 [b] [1] [A], [C], [D]).

As an initial matter, I question whether the exception set forth in Insurance Law § 1101 (b) (2) is even triggered inasmuch as it is limited by its terms to acts or transactions "effected by mail from outside this state," which did not occur here.  In any event, I conclude that the exception applies only to shield foreign insurance companies from the licensing requirements set forth in Insurance Law § 1102, and does not limit the exercise of long-arm jurisdiction pursuant to CPLR 302.  That conclusion is supported by the difference in the meaning and usage of the phrases "doing business in the state" and "doing an insurance business in this state" (*see e.g.* Insurance Law § 1101 [b] [1]; § 1102 [a]; § 1213 [a]).  As used in the Insurance Law, the phrase "doing business in the state" relates to the predicate for the exercise of long-arm jurisdiction pursuant to CPLR 302 (a) (1) (*see* Insurance Law § 1101 [b] [1] ["(A)ny of the following acts in this state . . . shall constitute doing an insurance business in this state *and* shall constitute *doing business in the state within the meaning of (CPLR 302)*" (emphasis added)]; Insurance Law § 1213 [a] [defining "what constitutes *doing business in this state*" for the purpose of "subject(ing) certain insurers to the jurisdiction of the courts of this state" (emphasis added)]; *see generally* CPLR 302 [a] [1] [court may exercise personal jurisdiction over any non-domiciliary who "transacts any business within the state"]).  By contrast, "doing an insurance business" refers to state licensing requirements (*see* Insurance Law § 1102 [a] ["No person, firm, association, corporation or joint-stock company shall *do an insurance business in this state*

unless authorized by a license in force pursuant to the provisions of this chapter" (emphasis added)]). I thus conclude that the exception set forth in Insurance Law § 1101 (b) (2) (E), which provides that certain acts "shall not constitute *doing an insurance business*" does not exempt SMI from personal jurisdiction (emphasis added). Any other interpretation of the statute would render meaningless the language in the exception that "section [1213] of this chapter shall nevertheless be applicable to such insurers," i.e., unauthorized foreign insurers licensed to transact insurance business in their place of domicile (§ 1101 [b] [2]). In my view, the quoted language means that, even though foreign insurers transacting business in New York may be exempt from the licensing requirements of New York Law, they are nevertheless subject to jurisdiction in New York courts. Indeed, the language in Insurance Law § 1213 is the equivalent of consent to personal jurisdiction.

In sum, I conclude that plaintiff made a prima facie showing not only that SMI contracted in the Cayman Islands to provide services in New York State within the meaning of CPLR 302 (a) (1), but also that it transacted business in this state pursuant to CPLR 302 (a) (1) and Insurance Law § 1101 (b) (1).

Finally, contrary to the conclusion of the majority, I conclude that plaintiff made a prima facie showing that jurisdiction exists on the alternative theories that SMI is a "mere department" of CHE, or that CHE is SMI's agent, and thus that CHE's actions may be attributed to SMI (*see generally Porter v LSB Indus.*, 192 AD2d 205, 212-213; *Turbon Intl., Inc. v Hewlett-Packard Co.*, 769 F Supp 2d 259, 260-261). As noted by the majority, CHE is the sole shareholder of SMI, and the two corporations share certain executive personnel as well as one board member. Furthermore, the record establishes that SMI's sole function is to provide insurance to CHE and its affiliates, that SMI is financially dependent on premiums paid by CHE and its affiliates, and that CHE controls many of the insurance-related activities of SMI (*see generally Delagi v Volkswagenwerk AG of Wolfsburg, Germany*, 29 NY2d 426, 431-432, *rearg denied* 30 NY2d 694; *Volkswagenwerk Aktiengesellschaft v Beech Aircraft Corp.*, 751 F2d 117, 120-122; *National Union Fire Ins. Co. of Pittsburgh v Ideal Mut. Ins. Co.*, 122 AD2d 630, 631-633; *Dorfman v Marriott Intl. Hotels, Inc.*, 2002 WL 14363, *7-8). Among other things, plaintiff submitted evidence that CHE and/or its agents: (1) drafted the insurance policy at issue and reviewed the policy; (2) determined the risks to be covered; (3) collected premiums from its affiliates for the professional liability coverage; (4) provided Catholic Health System and/or Sisters Hospital with any information regarding the professional liability coverage; (5) established the policy for making claims; and (6) received all notices of claims under the policy. Thus, given the foregoing interrelationship between SMI and CHE, I further conclude that there is at least an issue of fact whether SMI is subject to long-arm jurisdiction pursuant to an agency or "mere department" theory.

Entered:  July 6, 2012                          Frances E. Cafarell
                                                Clerk of the Court